**THE BRANDNER CORPORATION,**
Plaintiff,

v.

**V–FORMATION, INC. and Richard Stelnick, Defendants–Appellants,**

v.

**Jeanette Brandner, Defendant–**

Appellee.*

No. 02–9503.

United States Court of Appeals,
Second Circuit.

April 16, 2004.

Richard W. Hanes, Hanes & Schutz, P.C., Colorado Springs, Colorado (Louis Muggeo, Louis J. Muggeo & Associates, Salem, Massachusetts, on the brief), for Appellants.

Ian Wallach, Luce, Forward, Hamilton & Scripps LLP (Kimball Ann Lane, on the brief), New York, New York, for Appellee.

PRESENT: JACOBS, SOTOMAYOR,

* The names of the parties listed in this caption are spelled as indicated in the official caption in this case, which caption may not represent the correct spelling of the parties' actual names.

Circuit Judges.**

### SUMMARY ORDER

Familiarity with the factual and procedural background of this case, as well as the earlier summary order entered in this matter, is assumed. *See Brandner Corp. v. V–Formation, Inc.,* 75 Fed.Appx. 830 (2d Cir.2003) (unpublished summary order). Having reviewed the further findings and conclusions of the district court and the merits of the appeal, we hold that subject matter jurisdiction exists over this matter and affirm the judgment below.

■ As a general rule, a federal district court does not retain jurisdiction to enforce a settlement agreement unless the court, typically as part of its order of dismissal, orders the parties to comply with the terms of the settlement agreement or incorporates terms of a settlement agreement explicitly retaining jurisdiction into one of its orders. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 381–82, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Absent those circumstances, a district court may assert ancillary jurisdiction to enforce a settlement agreement where doing so would (1) "permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent," or (2) "enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80, 114 S.Ct. 1673 (internal citations omitted).

We conclude that we may exercise jurisdiction here for the reasons stated in the district court's diligently prepared findings and conclusions. *See* Findings and Conclusions, *Brandner Corporation v. V–Formation, Inc.,* No. 96 Civ. 3163 (S.D.N.Y.

Mar. 2, 2004). It is undisputed that the earlier "Partial Stipulation of Dismissal," as signed by the district court, dismissed the cross-claims with prejudice and did not contain a provision preserving the court's jurisdiction over the implementation of the settlement of those cross-claims. Although the district court dismissed the cross-claims without retaining jurisdiction, all of the parties on appeal remained before the district court as defendants to the claims of The Brandner Corporation ("TBC") and as counter-plaintiffs in their counterclaims against TBC. At a subsequent global settlement conference on May 26, 1998, the parties requested on the record that the district court retain jurisdiction to adjudicate any dispute concerning the global settlement agreement *and* the earlier cross-claim settlement agreement. The parties made clear that the proposed global settlement not only was conditioned on the earlier cross-claim settlement, but also involved "further interpretation or amendment of the terms of that settlement." Findings and Conclusions, at 6. Relying on such requests, the district court approved the global settlement and entered final judgment retaining exclusive jurisdiction to enforce both agreements. Thus, the general rule enunciated in *Kokkenen* has been satisfied. The parties, while the district court still retained jurisdiction over the action, expressly agreed to the district court's continuing jurisdiction over the cross-claim settlement agreement, thereby either modifying that agreement or further explaining the parties' initial intentions, which the court then adopted in its final judgment adjudicating all claims. *See Kokkonen,* 511 U.S. at 381–82, 114 S.Ct. 1673; *see also* Fed.R.Civ.P. 54(b) (providing that, in suits involving multiple

---

** The Honorable Fred I. Parker, who was a member of the panel, died following argument. The appeal is being decided by the remaining two members of the panel, who are in agreement. *See* 2d Cir. R. § 0.14(b).

claims or multiple parties, court may modify earlier orders prior to entry of final judgment adjudicating all claims).

■ On the merits, defendants-appellants V–Formation, Inc. and Richard Stelnick argue that, although the Product and License Agreement ("Product Agreement") "is not the paradigm of clarity," its "plain and unambiguous meaning" is that it functions only as a trademark and patent license agreement. Accordingly, they argue, the agreement does not require appellants to pay fees for manufacturing and/or selling skates that do not use a patent or trademark owned by defendant-appellee Jeannette Brandner. This argument is unavailing.

Based on our *de novo* review of the agreement, *see Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 198–99 (2d Cir. 2003) (stating that this Court reviews *de novo* a district court's determination regarding ambiguity in a contract), we conclude that the Product Agreement does not limit the fees owed for appellants' skates solely to those skates actually utilizing Brandner's patent or trademark. Rather, paragraph 12 of the agreement clearly provides that appellants must pay certain "Fees/Royalties" for "V–Formation Skate Products," which products are defined earlier in the agreement in Recital 6 in the following manner: "[Appellants have] developed a skate designated as the TST2000 and/or any other skate, and *may develop and/or sell any other skate* (hereafter V–Formation Skate Products")." (Emphasis added.) The agreement further makes clear that while appellants "may desire" to produce "V–Formation Skate Products" designated with Brand-

ner's trademark, *see* Product Agreement, at Recitals 6 & 7, and the agreement permits such a use of the mark, the agreement does not make the use or non-use of Brandner's mark dispositive of whether such skates are "V–Formation Skate Products." Our interpretation is buttressed by the use of the term "Product" in addition to the word "License" in the title of the agreement, as well as application of the term "fees" coupled with the term "royalties" in paragraph 12. Further, our reading is supported by additional language in paragraph 12, which provides that the fees/royalties "represent," *inter alia,* "consideration for dismissal of the parties' claims under the Confidential Settlement Agreement and Release." Therefore, Brandner is entitled to payment for all skates produced and/or sold by appellants. *See Dusé v. Int'l Bus. Machs. Corp.,* 252 F.3d 151, 158 (2d Cir.2001) ("Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (internal quotation marks and citation omitted)).[1]

For these reasons, the judgment of the district court is AFFIRMED.

---

1. Appellants also argue for the first time on appeal that the judgment below is inconsistent with patent law. Because appellants did not raise this argument below and because our refusing to consider it will not result in "manifest injustice," we decline to consider the argument here. *See Fifth Ave. Presbyterian Church v. City of New York,* 293 F.3d 570, 576 (2d Cir.2002).